[No. C046333. Third Dist. Jan. 11, 2005.]

PENN-AMERICA INSURANCE COMPANY, Plaintiff and Appellant, v. MIKE'S TAILORING, Defendant and Respondent.

## COUNSEL

Costa Law Firm, Daniel P. Costa and Paul C. Clauss for Plaintiff and Appellant.

Shepard & Haven, Stanley R. Parrish and Jennifer J. Schultz for Defendant and Respondent.

## OPINION

**BLEASE, Acting P. J.**—Plaintiff Penn-America Insurance Company (Penn-America) appeals from an adverse judgment in its declaratory relief action to determine whether the insurance policy it issued to Mike's Tailoring (Mike) covered the loss suffered.

The trial court determined the loss, which occurred when a clogged sewer line running underneath Mike's property caused raw sewage to flow into Mike's basement, was covered by the policy. It concluded the loss was covered under the terms of a policy covering the discharge of pollutants caused by the discharge of water directly resulting from the breaking or cracking of a part of a system containing water. The trial court found the exclusion for damage caused by "[w]ater that backs up from a sewer or drain" was not applicable because it encompassed damage caused by water and did not include pollutants carried by water. We disagree.

We shall conclude the exclusion from coverage for "[w]ater that backs up from a sewer or drain" must be given its common sense interpretation to include the sewage that inevitably accompanies the water in a sewer. We shall reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Penn-America issued a commercial lines insurance policy to Mike. Under the terms of the policy, Penn-America would pay for physical loss or damage to covered property caused by any "Covered Cause of Loss." The "Covered Causes of Loss" are "RISKS OF DIRECT PHYSICAL LOSS" unless the loss was excluded or limited by the policy.

The policy contains two relevant exclusions from coverage. If either one applies to the cause of loss there is no coverage.[1] The first exclusion is the water backup exclusion. It states in relevant part:

"We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. . . . [¶] . . . [¶]

"g. Water [¶] . . . [¶]

"(3) Water that backs up from a sewer or drain . . . . "

The second exclusion is the pollutant exclusion. It states in relevant part:

"We will not pay for loss or damage caused by or resulting from any of the following: [¶] . . . [¶]

"L. Discharge, dispersal, seepage, migration, release or escape of 'pollutants' unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the 'specified causes of loss.' But if loss or damage by the 'specified causes of loss' results, we will pay for the resulting damage caused by the 'specified causes of loss.' "

"Specified Causes of Loss" are defined as:

"Fire; lighting; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equip-

---

[1] Since we find the first exclusion applies we need not discuss the application of the second exclusion to the cause of loss in this case.

ment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage. [¶] . . . [¶]

"3. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam."

"Pollutant" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

For the purposes of this appeal, we accept the following findings of the trial court. A sewer pipe servicing Mike's premises and that of an adjacent property ran beneath the concrete floor of Mike's basement. The sewer pipe conveyed all waste water from both properties and the water contained, inter alia, grease, vegetable matter, and human excrement. The sewer pipe was connected to a clean-out pipe. The two were joined beneath the basement floor, and the clean-out pipe ascended vertically at an angle until it breached the basement floor of Mike's premises. At the time of the incident, the clean-out pipe was covered with a plastic cap where it exited the basement floor.

Approximately 20 to 25 feet downstream from the plastic cap the sewer pipe had a "discernible brief and abrupt change in direction." The change in direction was "more likely than not the result of a break in the sewer pipe at that point." The break allowed solid matter in the waste water to collect at that point, resulting in a blockage. The blockage constricted the flow of water and sewage, causing it to accumulate upstream from the obstruction.

The pressure of the accumulating water and sewage caused the plastic cap on the clean-out pipe to fail, and the contents of the sewer line were forced up the clean-out pipe into Mike's basement. The water and sewage from the sewer line flooded Mike's basement, and the water, sewage and fumes accompanying the sewage damaged Mike's property.

Based on these findings of fact, the trial court concluded the loss was covered notwithstanding the pollutant exclusion because the loss was one of the "Specified Causes of Loss" in the form of water damage. The trial court determined the downstream break in the sewer pipe and the failure of the clean-out cap constituted accidental breaks in the system causing a discharge of water and pollutants.

The trial court further concluded the water backup exclusion did not apply because it only encompassed damage caused by water, not damage caused by

the pollutants carried by water. The trial court granted judgment in Mike's favor on the issues of insurance coverage presented in the complaint.

## DISCUSSION

### I

### Review of Insurance Policies

■ Absent a factual dispute, the interpretation and application of insurance contracts is an issue of law which we review de novo. (*Century Transit Systems, Inc. v. American Empire Surplus Lines Insurance Co.* (1996) 42 Cal.App.4th 121, 125 [49 Cal.Rptr.2d 567].) Our resolution of this case rests on the interpretation of the contract language "[w]ater that backs up from a sewer or drain," an issue of law.

■ A contract is to be interpreted so as to give effect to the intent of the parties at the time the contract is formed. (Civ. Code, § 1636.) We infer the parties' intent from the written provisions of the contract. (Civ. Code, § 1639.) The written provisions of a contract "are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage . . . ." (Civ. Code, § 1644.)

■ "Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].) "An ambiguity arises only if '. . . there [is] more than one construction in issue which is semantically permissible . . . .' [Citation.]" (*City of Sacramento v. Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 795 [27 Cal.Rptr.2d 545].) In the case of an insurance policy there must be an " 'uncertainty in the application of the policy language to the facts upon which the claim of coverage is predicated.' " (*National Auto & Casualty Ins. Co. v. Contreras* (1987) 193 Cal.App.3d 831, 835 [238 Cal.Rptr. 627]; citation omitted.) "A claim of ambiguity cannot always be decided from the face of the [language]. It may be latent." (*City of Sacramento v. Public Employees' Retirement System, supra,* 22 Cal.App.4th at p. 795, citation omitted.)

If there is ambiguity in an insurance contract, the ambiguous provision is to be construed in the sense the insurer believed the insured understood the provision at the time the contract was formed. (*AIU Ins. Co. v. Superior Court, supra,* 51 Cal.3d at p. 822.) If this does not resolve the ambiguity, the ambiguous provision is to be resolved against the party who caused the

uncertainty. (*Ibid.*) Ambiguities in an insurance contract are generally to be resolved in favor of coverage. (*Ibid.*)

We shall conclude the meaning a lay person would ascribe to the phrase, "[w]ater that backs up from a sewer or drain" is not facially ambiguous and the record does not establish a latent ambiguity. Consequently we shall apply a common sense meaning in interpreting the policy.

## II

### Sewer Backup Exclusion

a. *"Water" v. "Pollutant"*

As explained, the trial court found the sewer backup exclusion inapplicable because it found the damage was caused by "pollutants" rather than water. Notwithstanding this determination, the trial court also stated: (1) the loss was "caused by water, waste, and sewage;" (2) the sewer pipe conveyed "waste-water . . . and that water contained many pollutants;" (3) the sewer line contained water and sewage, and the contents of the sewer line was forced up the clean-out pipe into Mike's basement and flooded the basement; and (4) the leakage of water constituted a " 'specified cause of loss' in the form of 'water damage' . . . ."

The phrase "[w]ater that backs up from a sewer or drain" is facially unambiguous. It is unreasonable to assume that water in a sewer will be free from waste, contaminants, and other noxious substances that are commonly referred to as sewage. A lay person reading the policy would assume that a backup of water from a sewer would contain both water and contaminants. No reasonable person would assume that water backing up from a sewer would be pure water. It is also unreasonable to assume the term "sewer," which is facially unqualified, has a latent, technical meaning which limits its application to the public portion of the sewer line.

Although no published California case has addressed this issue, several out of state cases are in accord with our conclusion. In *Newberg v. Commercial Union Ins. Co.* (Minn. Ct. App. 2000) 619 N.W.2d 757, the court considered whether an exclusion for "[w]ater which backs up through sewers or drains or which overflows from a sump" precluded coverage when the insured's drains discharged raw sewage. (*Id.* at p. 759, fn. 1.) The court enumerated the considerations leading it to conclude the exclusion encompassed raw sewage. "First, the impact of the water-damage exclusion is substantially enlarged by the language extending the concept to losses caused 'indirectly' by water backing up through sewers or drains, thus including the situation where water

carries with it other substances.[2] [¶] Second, we find compelling the reasonableness in understanding water that backs up 'through sewers or drains' includes sewer water or water containing various levels of raw sewage. [¶] Third, having in mind the implausibility of determining at what level water containing foreign substances ceases to be water, we find unreasonable a construction of 'water' that is confined to pure water or water containing substances other than sewage." (*Id.* at p. 759.)

In *Capelouto v. Valley Forge Ins. Co.* (1999) 98 Wn.App. 7 [990 P.2d 414 at page 419], a Washington appellate court held: "The average person purchasing insurance would understand that water that backs up from a sewer includes sewage. That is the plain, ordinary, and popular meaning attributed to sewer water, and any other interpretation ignores the clear and unequivocal meaning of this exclusion."

■ In *Citrano v. Hingham Mut. Fire Ins. Co.* (2003) 58 Mass.App. 906, at page 907 [788 N.E.2d 975, 976], a Massachusetts appellate court concluded the water referred to in the sewer backup exclusion was not pure water, but only water that backs up from sewers (or drains). Likewise, in *Rodin v. State Farm Fire & Cas. Co.* (Mo. Ct.App. 1992) 844 S.W.2d 537 at page 539, a Missouri appellate court held that "whether the loss was caused by pure water or by the pollutants contained in the sewage acting concurrently with water, it is excluded from coverage by clear, unambiguous policy language."

### b. *Efficient Proximate Cause*

■ Mike argues the loss was covered notwithstanding the sewer backup exclusion because the trial court found the "efficient proximate cause" of the loss was the breaking or cracking of a system carrying water, a covered risk. Under the efficient proximate cause theory, a loss that is caused by a combination of covered and excluded risks is covered if the covered risk is the efficient proximate cause of the loss. (*Pieper v. Commercial Underwriters Ins. Co.* (1997) 59 Cal.App.4th 1008, 1012 [69 Cal.Rptr.2d 551].) The efficient proximate cause is the predominating cause. (*Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 403 [257 Cal.Rptr. 292, 770 P.2d 704].)

The efficient proximate cause theory does not apply here. First, the trial court's statement of decision did not contain any finding relating to the efficient proximate cause theory. Second, the efficient proximate cause theory

---

[2] We note the policy in this case applies to a loss "caused . . . indirectly" by an excluded condition.

does not apply unless there are two separate or distinct perils, each of which could have caused the loss independently. (*Pieper v. Commercial Underwriters Ins. Co., supra,* 59 Cal.App.4th at p. 1020.) The analysis is not applicable where the loss results from a single cause, " 'albeit one susceptible to various characterizations . . . .' " (*Ibid.*) Here, none of the perils independently could have caused the loss. The break in the pipe would not have caused the basement to flood without the solid matter accumulating and eventually clogging the sewer, and the clean-out cap would not have failed without the pressure from the clogged sewer pipe.

The facts here are analogous to those in *Pieper v. Commercial Underwriters,* where the insurance policy covered loss occasioned by arson, but not loss directly or indirectly occasioned by a brush fire. A brush fire started by an arsonist destroyed the insured's rare mask collection. The court held that regardless of what started the fire, there was only one cause of loss, the brush fire, and the efficient proximate cause theory was inapplicable. (*Pieper v. Commercial Underwriters, supra,* 59 Cal.App.4th at pp. 1020–1021.) Likewise, we conclude that regardless of what may have initiated the obstruction of the sewer beneath Mike's basement, there was only one cause of the damage, the backup of water in the sewer clean-out pipe.[3]

### c. *"Backs Up"*

Mike argues that the term "backs up" means to move in a reverse direction, and there was no evidence the water reversed its flow. Consequently a loss caused by an overflow from water backed up in a sewer line is a covered loss. We disagree.

The dictionary definition of "back up" is an intransitive verb meaning "to accumulate in a congested state . . . ." (Webster's New Collegiate Dict. (1979) p. 82.) It also means "to rise and flow backward or overflow adjacent

---

[3] The sewer backup exclusion contains a potentially more expansive provision than the efficient proximate cause doctrine. It excludes loss "caused directly or indirectly" by the specified exception, and excludes such a loss "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

Insurance Code section 530 provides: "An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause." Because the efficient proximate cause doctrine is codified in this section, several appellate courts have found policy provisions attempting to restrict the efficient proximate cause doctrine invalid. (*Howell v. State Farm Fire & Cas. Co.* (1990) 218 Cal.App.3d 1446, 1452 [267 Cal.Rptr. 708]; *Palub v. Hartford Underwriters Ins. Co.* (2001) 92 Cal.App.4th 645, 651 [112 Cal.Rptr.2d 270].) The issue is currently before the Supreme Court. (*Julian v. Hartford Underwriters Ins. Co.* (Cal.App.),█ rev. granted Oct. 30, 2002, S109735.) Since we determine the efficient proximate cause doctrine is inapplicable, we need not determine whether this policy provision is valid.

areas . . ." such as "water checked by an obstruction." (Webster's 3d New Internat. Dict. (1971) p. 160.) These definitions accurately describe what happened in this case.

### d. *Blockage Within the Insured Premises*

Mike argues the sewer backup exclusion does not apply if the blockage of the sewer is within the insured premises. Mike argues the term "sewer" applies to the public part of a sewer line and the part that is within the insured's premises is called the plumbing system. However, there is no policy language that qualifies the term "sewer" by dividing it into parts and hence no language which shows the sewer backup exclusion is to be so construed.

In *Hallsted v. Blue Mountain Convalescent Center, Inc.* (1979) 23 Wn.App. 349 [595 P.2d 574], a Washington appeals court held that the language in a sewer backup exclusion of a homeowner's policy was ambiguous only when read in conjunction with a provision specifically allowing coverage for the "accidental discharge" of water from within a plumbing system. (*Id.* at pp. 574–575.) There is no analogous coverage provision in the policy here that would compel us to harmonize the two provisions by reading the exclusion contrary to its plain terms.

Likewise in *World Fire & Marine Ins. Co. v. Carolina Mills Distributing Company* (1948) 169 F.2d 826, cited by Mike, the court held the exclusion did not apply to a discharge of water from within the insured's plumbing system because the policy contained a provision specifically covering water damage from within a plumbing system. (*Id.* at pp. 828, 830.)

These cases, which read the exclusion language in the light of the particular coverage language, are of no aid here. The coverage provisions in this policy are general, covering all risks that are not otherwise excluded. The "water damage" definition, listed under "specified causes of loss," is relevant only to the separate exclusion question whether damage from the release of "pollutants" contained in the sewer water was an excluded risk. But there is no coverage provision which includes damage from the discharge of water from a plumbing system and hence no coverage provision which bears on the meaning of the exclusion provision.

Accordingly, we conclude the sewer backup exclusion includes loss or damage caused by sewage and pollutants contained in sewer water, and the loss in this case was excluded from coverage.

## DISPOSITION

The judgment is reversed. Appellant shall recover costs on appeal.

Raye, J., and Morrison, J., concurred.

A petition for a rehearing was denied February 3, 2005, and respondent's petition for review by the Supreme Court was denied April 20, 2005. George, C. J., did not participate therein.