## CIRCUIT COURT OF FAIRFAX COUNTY

Kerrie C. Dent
and Kevin B. Dent

v.

Allstate Indemnity Co.

March 23, 2011

Case No. CL-2010-3481

By Judge Randy I. Bellows

On February 11, 2011, this Court heard oral argument on the parties' Cross-Motions for Summary Judgment. At the conclusion of the hearing, the Court informed the parties that it would take the matter under advisement and that they may file supplemental briefs to aid the Court in its decision. After reviewing the parties' briefs and in light of the oral arguments made, the Court is now prepared to rule.

### I. *Background*

In June 2003, Plaintiffs Kerrie C. Dent and Kevin B. Dent purchased a Deluxe Plus Homeowner Policy from Defendant Allstate Indemnity Company ("Homeowner Policy") to cover their home in McLean, Virginia. (Statement of Undisputed Facts, ¶ 3.) Plaintiffs paid an additional premium in order to be covered by a Virginia Water Damage Endorsement (the "Endorsement"). *Id.* at ¶ 5.

Plaintiffs' home is constructed with a walk-out basement and a series of concrete steps to access the basement. *Id.* at ¶ 7. "At the bottom of the concrete steps, and outside of the dwelling, is a drain intended to drain surface water from the outside that goes down the steps." *Id.* On or about December 27, 2009:

> as a result of rain, surface water went down the outside stairs
> and gathered in the well with the drain. The drain was clogged

> so that water could not enter the drain. As a result, the surface water flowed into the basement causing damage to portions of the basement.

*Id.* at ¶¶ 10-11.

On or about December 28, 2009, Plaintiffs contacted Defendant to report the damage to their basement and request coverage under the Endorsement. *Id.* at ¶ 13. Defendant denied the claim on December 31, 2009, and confirmed that denial in a letter dated January 5, 2010. *Id.* at ¶ 14 and Ex. E. In Defendant's denial letter, it maintained that the loss to Plaintiff's property was directly or indirectly caused by one or more of the sources described in Section I of the Homeowner Policy entitled "Losses We Do Not Cover Under Coverages A and B." *Id.* at Ex. E.

The Homeowner Policy states in pertinent part that Defendant does not cover loss:

> caused directly or indirectly by any of the following, regardless of any other cause or event contributing concurrently or in any sequence to the loss. A. 1. Flood, including, but not limited to surface water, waves, tidal water, or overflow of any body of water, or spray from any of these, whether or not driven by wind. 2. Water that backs up through sewers or drains. 3. Water that overflows from a sump pump, sump pump well, or other system designed for the removal of subsurface water which is drained from a foundation area of a structure. 4. Water below the surface of the ground, regardless of its source. This includes water which exerts pressure on, or flows, seeps, or leaks through any part of the residence premises. . . .

*Id.* at Ex. A, 6. The Endorsement states that "[f]or an additional premium. . . . We will cover direct physical loss to covered property . . . caused by water or any other substances which backs up through sewers or drains." *Id.* at Ex. B. Since 2003, Plaintiffs have annually renewed their Homeowner Policy with the Endorsement and paid all premiums. *Id.* at ¶ 6.

In their Motion for Summary Judgment on the Issue of Liability, filed on January 28, 2011, Plaintiffs argue that the Endorsement covers the loss incurred in this case because the damage to the basement was caused by a "backed up" drain. Plaintiffs emphasize that the Endorsement modified the Homeowner Policy to provide coverage for water that "backs up through sewers or drains," which would otherwise be excluded under the Homeowner Policy. *See id.* at Ex. A, 6. In the alternative, Plaintiffs argue that the terms of their agreements with Defendant are ambiguous at best and should be interpreted in their favor.

In its Cross-Motion for Summary Judgment, Defendant contends that the Endorsement does not apply to these facts as the parties stipulated that no water ever entered the drain and, therefore, no water could have travelled "through" the drain. Defendant argues that the water which caused the damage to Plaintiffs' home was "surface water" or water "which is diffused over the surface of the ground, derived from falling rains and melting snow, and continues to be such until it reaches some well defined channel." *Howlett v. South Norfolk*, 193 Va. 564, 568, 69 S.E.2d 346, 348 (1952). Defendant maintains that the Plaintiffs' loss was not covered under the Endorsement as it did not modify the so-called "surface water exclusion" in subsection A.1 of the Homeowner Policy. (*See* Statement of Undisputed Facts Ex. A.)

## II. *Analysis*

### A. *Legal Standard*

Rule 3:20 of the Rules of the Supreme Court of Virginia states, in pertinent part, that:

> Any party may make a motion for summary judgment at any time after the parties are at issue, except in an action for divorce or for annulment of marriage. If it appears from the pleadings, the orders, if any, made at a pretrial conference, the admissions, if any, in the proceedings, or, upon sustaining a motion to strike the evidence, that the moving party is entitled to judgment, the court shall enter judgment in that party's favor. Summary judgment, interlocutory in nature, may be entered as to the undisputed portion of a contested claim or on the issue of liability alone although there is a genuine issue as to the amount of damages. Summary judgment shall not be entered if any material fact is genuinely in dispute.

Insurance contracts "are to be construed according to the sense and meaning of the terms which the parties have used; and, if they are clear and unambiguous, their terms are to be taken in their plain, ordinary, and popular sense." *GEICO v. Moore*, 266 Va. 155, 164, 580 S.E.2d 823, 828 (2003) (*citing Bawden v. American Ins. Co.*, 153 Va. 416, 426, 150 S.E. 257, 260 (1929). On the other hand, any ambiguities in insurance contracts must be interpreted in favor of the insured. *Tiger Fibers, L.L.C. v. Aspen Specialty Ins. Co.*, 594 F. Supp. 2d 630, 639 (E.D. Va. 2009) (*citing S.F. v. West Am. Ins. Co.*, 250 Va. 461, 463 S.E.2d 450, 452 (1995)).

B. *Findings*

The issue in this case is whether the source of the damage to Plaintiffs' property was caused by surface water, which is excluded from coverage, or by "water that backs up through sewers or drains," which is covered by virtue of the Endorsement. Resolution of this issue depends on the meaning of the phrase "back up through." Plaintiffs argue that this phrase should be broadly interpreted to include the instant case where a completely blocked drain caused rain water to pool and then enter the basement. Defendant argues that this phrase "denotes a transit of water in the reverse of the normal direction of a sewer or drain and does not apply to clogged drains." (Def.'s Supplemental Mem. in Supp. of Mot. for Summ. J. 1.) Defendant argues, on the other hand, that water must at least enter the drain for the Endorsement to apply.

The Court is not aware of any Virginia precedent that addresses this precise issue. However, other jurisdictions have interpreted similar insurance contracts and found that facts similar to the instant case fall under surface water exclusions rather than other provisions. In the case of *Hirschfield v. Continental Casualty Co.*, 199 Ga. App. 654, 405 S.E.2d 737, 738 (1991), "water was [either] diverted from the storm drain to the surface by an underground blockage, or it accumulated near the grate because the drain was otherwise obstructed." The court determined that either set of facts would fall "squarely within the `surface water' exclusion in the policy" rather than losses "caused by water which backs up through sewers or drains." *Id.* The court reasoned that "[e]ven if the insuring provision for `water which backs up through sewers and drains' might arguably apply to rainwater backing up to the surface through the storm drain, the `surface water' exclusion clearly and explicitly excludes coverage under the present circumstances." *Id.* at 739. Similarly, in *Cameron v. USAA Property & Casualty Ins. Co.*, 733 A.2d 965, 966 (D.C. 1999), water from melted snow ran down the stairwell and passed a blocked drain before going under the basement door. Although the court did not address the issue of whether this could be considered a backup from a sewer or drain, it found that the surface water exclusion applied to those facts, which are practically indistinguishable from the instant case. *See id.* at 971.

Virginia law clearly provides that courts must give words "their usual, ordinary, and popular meaning" when interpreting insurance contracts. *See City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc.*, 271 Va. 574, 628 S.E.2d 539, 541 (2006); *see also Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 608, 735 A.2d 100 (1999) ("[w]ords of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense . . . and we may inform our understanding of these terms by considering their dictionary definitions") (internal citations omitted). The phrase "back up" has been defined as "an intransitive verb

meaning 'to accumulate in a congested state. . . .' It also means 'to rise and flow backward or overflow to adjacent areas'. . . such as 'water checked by an obstruction'." *Penn-America Ins. Co. v. Mike's Tailoring*, 125 Cal. App. 4th 884, 22 Cal. Rptr. 3d 918, 924-25 (2005) (*citing Webster's New Collegiate Dictionary* and *Webster's Third New Int'l Dictionary*). The Merriam-Webster online dictionary defines "through," *inter alia,* as (1) "movement into at one side or point and out at another and especially the opposite side of;" (2) "by way of;" (3) "passage from one end or boundary to another;" and (4) "movement within a large expanse." http://www.merriam-webster.com/dictionary/through (last visited March 22, 2011). While the Court heard argument on whether "through" could mean "by means of" or "because of" in this context, that interpretation is not consistent with case law and the Homeowner Policy as a whole. *See* Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/through (last visited March 22, 2011). Reading these phrases together, the Court finds that the plain meaning of the Endorsement language requires that there must be some water in the pipe. The parties stipulated that "water could not enter the drain," therefore, it is not possible that the water which damaged Plaintiffs' basement backed up through the drain or sewer. (*See* Statement of Undisputed Facts ¶ 11.) In this case, the heavy rainfall travelled as surface water across the completely clogged drain as if no drain existed.

Moreover, if surface water only partially contributed to the damage, the entire loss still would not be covered under the Homeowners Policy. (*See* Statement of Undisputed Facts, Ex. A) (excluding loss "caused directly or indirectly by any of the following, regardless of any other cause or event contributing concurrently or in any sequence to the loss"); *see also Casey v. General Accid. Ins. Co.*, 178 A.D.2d 1001, 1002, 578 N.Y.S.2d 337 (N.Y. App. Div. 4th Dep't 1991) ("[w]hile the clogged drain certainly contributed to the loss, the actual cause of the loss was the presence of surface water. Since the policy expressly excluded any loss 'caused directly or indirectly' by surface water 'regardless of any other cause or event contributing concurrently or in any sequence to the loss,' we grant judgment declaring that the exclusion is applicable as a matter of law"); *Front Row Theatre v. American Mfr.'s Mut. Ins. Cos.*, 18 F.3d 1343, 1347 (6th Cir. 1994) ("[w]hen damage to an insured's property is caused by both a covered and an excluded event, coverage may be expressly precluded by language in the policy.")

The Court does not need to reach the issue of whether water must travel in the reverse direction of normal passage because the parties stipulated that no rain water entered the drain. However, the Court notes that, while the cases reviewed by the Court reached different conclusions with regard to Defendant's argument that water must travel in the reverse direction in the pipe or drain, these cases were consistent in that the water occupied the pipe or drain before it caused the damage. *See, e.g.,*

*Jennings v. Hartford Fire Ins. Co.*, 1991 U.S. Dist. LEXIS 5632 (E.D. Pa. 1991) (holding that reversal of flow from the ordinary direction is not a requirement for a similar sewer backup exclusion); *Penn-America Ins. Co. v. Mike's Tailoring, supra* (holding that flow reversal was not required based on what a "lay person reading the policy would understand"); *Horizon III Real Estate v. Hartford Fire Ins. Co.*, 186 F. Supp. 2d 1000, 1003, n. 1 (D. Minn. 2002) (finding that a "backed up" drain includes one in which the water is "static" and the provision did not require a reversal of flow); *Front Row Theatre, Inc. v. American Manufacturer's Mut. Ins. Co.*, 18 F.3d 1343 (6th Cir. 1994) ("backs up" does not require flow in the opposite direction of that intended); *Gammons v. Tennessee Farmers Mutual Ins. Co.*, 1986 Tenn. App. LEXIS 3439, *9 (Tenn. App., 1986) (holding that "water which backs up through sewers or drains" refers "simply to water in a sewer or drain that flows in a direction opposite to the intended and usual flow.")

In summary, based on the above cases and the Court's own analysis of the plain meaning of water backing up through a sewer or drain, the Court finds that at least some water must enter the drain or pipe for the Endorsement language to apply. Here, by stipulation of the parties, no water entered the drain. Therefore, the damage to Plaintiffs' home falls under the surface water exclusion, and Defendant is not liable.

Accordingly, for the reasons stated above, Defendant's Cross-Motion for Summary Judgment is granted, and Plaintiffs' Motion for Summary Judgment on the Issue of Liability is denied.