Filed 2/5/15  Tselevich v. Allstate Ins. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MAXIM TSELEVICH et al., | B250792 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC485650) |
| v. | |
| ALLSTATE INSURANCE COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Law Office of Mark B. Scott and Mark B. Scott for Plaintiffs and Appellants.

MacGregor & Berthel, Gregory Michael MacGregor, Deborah A. Berthel and Joshua N. Willis for Defendants and Respondents.

———————————

This appeal presents a coverage issue under a homeowner's insurance policy issued by Allstate Insurance Company. The policy excludes losses caused by "[w]ater or any other substance that backs up through sewers or drains" (water-damage exclusion). The trial court concluded the water-damage exclusion was unambiguous when ruling on Allstate's demurrer to the first amended complaint.[1] Following its ruling sustaining the demurrer without leave to amend, the trial court entered judgment of dismissal. The homeowners, appellants Maxim Tselevich and Preston Chiaro, contend the water-damage exclusion does not apply as they have alleged the damage to their property was not caused when water "backed up" through the sewer line, but when raw sewage in the municipal sewer line "stopped flowing in the intended direction" because of a break or offset in the main sewer line and was "diverted above the blockage to another and wholly unintended path" through their sewer line and into their house and onto their property. We conclude the water-damage exclusion is unambiguous and coverage under the insurance policy is excluded. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*[2]

Tselevich and Chiaro own a residence located at 7541 Hermes Drive in West Hollywood, California (the residence). On December 21, 2009,[3] raw sewage flowed into the residence, "entering the first floor, through the bathroom toilet and sink, and kitchen and bar sinks, discharging raw sewage, throughout the entire first floor." Tselevich

---

[1]     The demurrer was brought on behalf of Allstate Insurance Company, Allstate Insurance Company of California, and Allstate Property and Casualty Insurance Company (collectively, Allstate).

[2]     For purposes of appellate review of the order sustaining the demurrer, we accept as true all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

[3]     The complaint alleges the incident occurred on December 19, 2009, while the first amended complaint alleges that the incident occurred two days later on December 21, 2009.

called a plumber who responded to the emergency and stated the problem was in the City of Los Angeles sewer main.

Chiaro had obtained a homeowner's insurance policy issued by Allstate. The water-damage exclusion in the policy states: "Losses We Do Not Cover Under Coverages A and B: [¶] We do not cover loss to the property described in Coverage A—Dwelling Protection or Coverage B—Other Structures Protection consisting of or caused by: [¶] . . . [¶] 2. Water or any other substance that backs up through sewers or drains." (Bold omitted.)

On December 21, 2009, Tselevich called Allstate, and the Allstate representative opened a claim.

On January 4, 2010, Allstate conducted a field inspection of the residence. Allstate denied the claim in a letter dated February 1, 2010 based upon the water-damage exclusion in the policy. Litigation ensued.

2. *Proceedings*

a. *Demurrer to the Complaint Sustained with Leave to Amend*

On May 31, 2012, Tselevich and Chiaro filed a complaint against Allstate. The complaint alleged the incident as follows: "[T]here was a blockage in the Hermes Avenue sewer main which caused raw sewage from the houses on Hermes Avenue to flow into Tselevich's sewer lateral and discharge sewage into the Residence and onto the lot. The raw sewage was discharged throughout the Residence's first floor."

It is alleged that when Tselevich consulted the plumbing company that previously had repaired the plaintiffs' sewer lateral, the plumber informed Tselevich that the "problem was at the Hermes Drive sewer main. He then told Tselevich to call the City of Los Angeles ('the City') to report the Sewer Main Damage, and make a claim to his homeowners' insurance company."

Allstate filed a demurrer and motion to strike portions of the complaint. The demurrer was sustained with leave to amend, rendering the motion to strike moot. While the parties addressed the coverage issue, the trial court was concerned that the plaintiffs did not have a copy of the insurance policy and ordered Allstate to provide one.

3

Although the trial court stated on the record it did not think the complaint stated a cause of action, it gave the plaintiffs leave to amend to have the benefit of the policy to see if a cause of action could be stated.

      b. *Demurrer to the First Amended Complaint Sustained Without Leave to Amend*

The first amended complaint alleged the problem with the city's main sewer caused raw sewage to be "diverted," not "backed up" through the homeowners' sewer. It is alleged the plumber informed the Allstate adjuster that the problem occurred off the property as "there was a blockage in the City's main sewer, in the street, and the flow of raw sewage was diverted from the main sewer into plaintiffs' sewer lateral, which did not have a backflow preventer, and then into the Residence, inundating the Property."

Based on Allstate's denial of the claim, the first amended complaint alleged causes of action for (1) declaratory relief, (2) breach of policy, (3) breach of covenant of good faith and fair dealing, (4) insurance bad faith, (5) fraudulent concealment, suppression, non-disclosure, (6) negligent non-disclosure, and (7) intentional infliction of emotional distress. The insurance policy was attached to the first amended complaint, along with the denial of coverage letter.

Allstate filed a demurrer to the first amended complaint, asserting among other grounds that the entire first amended complaint and all causes of action alleged therein were barred by the water-damage exclusion in the policy.[4] Relying on *Cardio Diagnostic Imaging, Inc. v. Farmers Ins. Exchange* (2012) 212 Cal.App.4th 69 (*Cardio Diagnostic*), in which the court construed a policy exclusion similar to the one at issue here, Allstate contended that as a matter of law there was no coverage for the loss. The trial court agreed with Allstate, stating that the first amended complaint "does not state a cause of action because of the application of the [water-damage] exclusion." The court's order

---

[4]     Allstate also moved on the grounds that a one-year statute of limitations in the policy barred the claims alleged in the first amended complaint, the tort claims were not pleaded with the requisite specificity and failed to state a cause of action, and Tselevich lacked standing to assert these claims because he is not a named insured on the policy.

states: "[T]he Court finds no coverage existed and as such Plaintiffs Fail to State any Cause of Action against any Allstate Defendant."

The trial court entered a judgment of dismissal. This timely appeal followed.

DISCUSSION

1. *Standard of Review*

The standard of review for an order sustaining a demurrer without leave to amend is de novo. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid*.)

"To meet [their] burden of showing abuse of discretion, the plaintiff[s] must show how the complaint can be amended to state a cause of action. [Citation.] However, such a showing need not be made in the trial court so long as it is made to the reviewing court." (*William S. Hart Union High School Dist. v. Regional Planning Com.* (1991) 226 Cal.App.3d 1612, 1621.) As shall be shown, appellants have not met their burden.

2. *Interpretation of Insurance Policy*

Here, we must interpret an insurance policy, which is a legal question that we review de novo. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) Our resolution of this case rests on the interpretation of the contract language in the water-damage exclusion in the insurance policy, which excluded coverage for damage caused by: "[w]ater or any other substance that backs up through sewers or drains."

5

" 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. [Citation.]' [Citation.] 'The goal of contract interpretation is to give effect to the mutual intent of the parties. [Citation.] If contract language is clear and explicit, we ascertain this intent from the written provisions and go no further. [Citation.] Words in an insurance policy must be understood in their ordinary sense unless given special meanings by the policy. [Citation.]' [Citation.]" (*Golden Eagle Ins. Co. v. Insurance Co. of the West* (2002) 99 Cal.App.4th 837, 845.)

" 'An ambiguity arises only if ". . . there [is] more than one construction in issue which is semantically permissible . . . ." [Citation.]' [Citation.] In the case of an insurance policy there must be an ' "uncertainty in the application of the policy language to the facts upon which the claim of coverage is predicated." ' [Citation.] 'A claim of ambiguity cannot always be decided from the [language]. It may be latent.' [Citation.]" (*Penn-America Ins. Co. v. Mike's Tailoring* (2005) 125 Cal.App.4th 884, 889.)

"If there is an ambiguity, . . . it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. (Civ. Code, § 1649.) If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. (*Id.*, § 1654.) In the insurance context, we generally resolve ambiguities in favor of coverage. [Citations.]" (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822.) Like the trial court, we find no uncertainty or ambiguity in the water-damage exclusion in the insurance policy.

3. *The Causes of Action Based upon the Interpretation of the Water-Damage Exclusion Fail as a Matter of Law*

Appellants contend the trial court erred in sustaining the demurrers to the causes of action arising from the interpretation of the water-damage exclusion, which include declaratory relief (first cause of action), breach of policy (second cause of action), breach of the covenant of good faith and fair dealing (third cause of action), and insurance bad faith (fourth cause of action). These causes of action allege that Allstate unreasonably interpreted the water-damage exclusion, as the exclusion should be interpreted to apply

6

"only to losses resulting from back ups of the insured's sewage" caused by a blockage in the insured's sewer lateral within the insured's control.

Employing principles of construction, we begin with the language of the insurance policy in order to ascertain the plain meaning or the meaning a layperson would ordinarily attach to it. (*Waller v. Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at p. 18.) The water-damage exclusion states that a loss to the property caused by "[w]ater or any other substance that backs up through sewers or drains" is not covered under the policy.

The water-damage exclusion is unambiguous and is not rendered ambiguous because appellants offer alternative constructions. A layperson would understand the water-damage exclusion to apply when water or any other substance comes up out of a sewer or drain due to a blockage. (See *Cardio Diagnostic, supra,* 212 Cal.App.4th at p. 76; *Penn-America Ins. Co. v. Mike's Tailoring*, *supra*, 125 Cal.App.4th at pp. 890, 892 [The exclusion for damage caused by " '[w]ater that backs up from a sewer or drain' is facially unambiguous."].)

a. *No Ambiguity Exists in the Water-Damage Exclusion*

Appellants maintain the term "sewer" is not defined in the policy and is ambiguous because it could mean either the property owner's sewer line or the city's main sewer line. This argument attempts to create an ambiguity by adding qualifying words to the insurance policy. The water-damage exclusion applies if water or any other substance backs up through sewers or drains. There is no distinction in the insurance policy between a sewer under the insured's control and one that is not.

In a variation of the same argument, appellants next contend that the term "backs up" as used in the water-damage exclusion refers only to a blockage that backed up the insured's own sewage through the insured's drain or sewer. As written, water and any other substance that backs up through a sewer or drain due to a blockage is not limited to any one cause or location of the blockage.

A similar argument was raised and rejected in *Penn-America Ins. Co. v. Mike's Tailoring*, *supra*, 125 Cal.App.4th 884. The insured argued that the back-up exclusion in its policy did not apply if the blockage was within the insured's premises because the

7

term "sewer" applied to the public part of the sewer line and the part within the insured's premises is referred to as the "plumbing system." (*Id*. at p. 893.) The court noted there was no policy language that divided the sewer into parts so as to construe the unambiguous back-up exclusion as suggested by the insured. (*Ibid*.)

Here, just as in *Penn-America Ins. Co. v. Mike's Tailoring*, there is no reasonable construction of the water-damage exclusion that breaks the term "sewer" into parts for purposes of determining a blockage or limits the exclusion only to a blockage caused by the insured's raw sewage. The policy exclusion is written in broad terms that the appellants seek to narrow by presenting an unreasonable construction of this plain and unambiguous language.

b. *The Water-Damage Exclusion Applies Because the Allegations State Water or any Other Substance Backed up Through the Sewer*

Appellants next contend that they have sufficiently alleged a loss under the insurance policy because the first amended complaint alleges raw sewage was "diverted" and did not "back up" as there is no allegation in the first amended complaint of an accumulation of sewage originating in their sewer that caused a blockage in which water or any other substance backed up into their sewer or drain. Instead, "raw sewage in the City's sewer main, which, due to a break and/or offset in the main sewer, stopped flowing in the intended direction, and was diverted above the blockage to another and wholly unintended path, [to] plaintiffs' sewer line, where it was able to simply flow into plaintiffs' building." These allegations explain the blockage (in the city's sewer main) that caused raw sewage to back up through a sewer or drain and into their residence. These allegations fall within the water-damage exclusion.

In support of their distinction between water that "backs up" through a sewer or drain, and water that is "diverted" and comes up through a sewer or drain, appellants rely on the definition of the term "backs up" in *Penn-America Ins. Co. v. Mike's Tailoring*, *supra*, 125 Cal.App.4th 884. Their reliance is misplaced. Citing the dictionary definition of "back up," the court noted " 'back up' is an intransitive verb meaning 'to accumulate in a congested state . . . .' [Citation.] It also means 'to rise and flow backward or

8

overflow adjacent areas . . .' such as 'water checked by an obstruction.' [Citation.]" (*Id.* at pp. 892-893.) Appellants maintain that the diverted raw sewage that came up through the sewer and damaged their property was not in a "congested state," did not rise and flow backward, and did not overflow. "Divert" is a transitive verb meaning to turn from one course, direction, or objective to another. (Webster's 3d New Internat. Dict. (1971) p. 663, col. 1.) Here, raw sewage was diverted (checked by an obstruction), causing it to change course and back up through a sewer or drain and into their residence.

Appellants also rely on *Cardio Diagnostic*, *supra*, 212 Cal.App.4th 69, but that case supports Allstate's interpretation of the water-damage exclusion. In *Cardio Diagnostic*, the court construed a policy that excluded any " 'loss or damage caused directly or indirectly by . . . [w]ater that backs up or overflows from a sewer, drain or sump.' " (*Id.* at p. 71.) The insured's business premises and property were extensively damaged when water overflowed from a toilet in an upstairs suite, eventually flooding the insured's suite. (*Id.* at pp. 71-72.) An investigation revealed that a sewer line blockage caused the water in the toilet to overflow. (*Id.* at p. 72.) Farmers denied coverage based upon the policy exclusion. (*Ibid.*)

The insured argued the policy exclusion did not apply because the term " 'backs up or overflows from' " means that water "must *come out* of the sewer or drain" and does not include water unable to proceed down an interior drain. (*Cardio Diagnostic*, *supra*, 212 Cal.App.4th at p. 74.) The court rejected the argument, noting the insured had focused solely on the meaning of "backs up" in the exclusion and not on the meaning of "overflows." (*Id.* at pp. 74-75.) In making this distinction, the court cited out-of-state and federal case law that the insured relied on to highlight that the cited cases addressed policy exclusions construing "backs up," not " 'backs up or overflows.' " (*Id.* at p. 75.) In these cases, water that "backs up" from a sewer was construed to mean water that is checked by an obstruction and cannot flow in its usual direction.[5] (*Ibid.*) This is

---

[5] Appellants cite to several of these cases in their opening brief, including an unpublished case from the district court in Maryland (*Drutz v. Scottsdale Ins. Co.* (D.Md. Feb. 28, 2012, Civ. A. No. WMN-10-3499) 2012 U.S.Dist. Lexis 25286, *7-14), a United

9

consistent with California case law interpreting the term "backs up" in an insurance policy exclusion. (See *Penn-America Ins. Co. v. Mike's Tailoring*, *supra*, 125 Cal.App.4th at pp. 892-893.)

The *Cardio Diagnostic* court noted that a layperson would understand the term "backs up" as used in the policy exclusion to mean "water that comes up out of a sewer, drain, or sump," and the term "overflows" to mean water that spills over from a sewer, drain, or sump due to a blockage. (*Cardio Diagnostic*, *supra*, 212 Cal.App.4th at p. 76.) We agree with the *Cardio Diagnostic* court's construction of the term "backs up," as used in the water-damage exclusion at issue here, that is, excluding from coverage property damage caused when water or any other substance comes up out of a sewer or drain due to a blockage.

Here, the allegations in the initial complaint allege that a blockage in the city's sewer line caused raw sewage to flow into the sewer lateral and come up out of a drain and into the residence. The first amended complaint alleges additional facts uncovered during an investigation that the blockage in the sewer line prevented the flow of sewage in its usual direction and the "diverted" raw sewage came up out of a sewer or drain and into the residence.[6] Accepting these allegations as true, the water-damage exclusion applies to this claim. The trial court did not err in sustaining the demurrers to the causes

States Court of Appeals case from the Sixth Circuit (*Front Row Theatre v. American Manufacturer's Mut.* (6th Cir. 1994) 18 F.3d 1343, 1348), a Colorado Court of Appeal case (*Haines v. United Sec. Ins. Co.* (1979) 43 Colo.App. 276 [602 P.2d 901, 902]), and a Washington Court of Appeal case (*Hallsted v. Blue Mountain Convalescent Ctr.* (1979) 23 Wash.App. 349 [595 P.2d 574, 575-576]). These cases construed "back-up exclusions," in insurance policies but made no distinction between water that "backs up" rather than water that is "diverted" through a sewer or drain.

[6] Appellants argue the trial court erred in sustaining the demurrer because there are disputed facts alleged in the first amended complaint. As previously stated, we accept as true the facts alleged. We do not, however, accept as true conclusions of fact or law, and therefore disregard the numerous conclusory allegations in the first amended complaint alleging that no back up occurred.

of action seeking declaratory relief (first cause of action) and breach of policy (second cause of action) because the plaintiffs did not allege a covered loss as a matter of law.

Because no policy benefits were due, the claims for breach of the implied covenant of good faith and fair dealing (third cause of action) and bad faith (fourth cause of action) also cannot be maintained as a matter of law (*Waller v. Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at p. 35).

    4.  *The Fraudulent Concealment Cause of Action Is Not Sufficiently Alleged*

Appellants contend that they have sufficiently alleged a cause of action for fraudulent concealment based upon nondisclosure of material facts. The first amended complaint alleges that Allstate took "extraordinary measures to conceal from plaintiffs the true facts regarding the insureds and the existing coverages under the [p]olicy, and why the loss was not excluded" under the water-damage exclusion. Allstate and its agents allegedly had no reasonable basis for making the representations to plaintiffs that the loss was caused by a "backup in plaintiffs' lateral sewer, . . . that the loss was subject to [the water-damage exclusion], and that Allstate knew or should have known that plaintiffs would not become aware of Allstate's deception."

The elements of fraudulent concealment are: (1) concealment or suppression of material fact, (2) duty to disclose the fact, (3) intent to conceal or suppress with intent to defraud, (4) plaintiff must have been unaware of the fact and would not have acted in such a manner had the plaintiff known of the concealment or suppression, and (5) resulting damage. (*Jones v. ConocoPhillips* (2011) 198 Cal.App.4th 1187, 1198; *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.* (1992) 6 Cal.App.4th 603, 612-613.) Liability for concealment is imposed where the defendant is in a fiduciary or other relationship that imposes a duty of disclosure. (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 859.)

The allegations do not state a cause of action for fraudulent concealment as the first element has not been sufficiently alleged. The allegations regarding concealment of the water-damage exclusion are contradicted by the coverage denial letter attached as an exhibit to the first amended complaint. "[T]o the extent the factual allegations conflict

11

with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits." (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505.) As of February 1, 2010, Allstate identified the water-damage exclusion in the policy and the reason why the claim was denied.[7]

Appellants take issue with the content of the denial of coverage letter because, as alleged, the insurance adjuster either concealed the true cause of the damage that they later discovered through an independent investigation, or the adjuster failed to thoroughly investigate the true cause of the damage. As previously stated, there are no specific allegations that Allstate or its adjuster either intentionally concealed, suppressed, or failed to disclose any material facts later discovered by plaintiffs' consultants regarding the cause of the blockage on Hermes Drive. General and conclusory allegations are not enough to plead fraudulent concealment. (See *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.)[8] "[E]very element of the cause of action for fraud must be alleged in full, factually and specifically." (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331.) The specificity requirement serves two purposes: (1) to furnish the defendant with certain definite charges that can be intelligently met, and (2) to

---

[7]    The denial of coverage letter states: "Specifically, the following facts are the basis for this decision: Based on our conversation at the time of my inspection & subsequent conversation with Byron at Schu[e]lke Plumbing, the sewage back-up through your drain line was the result of a blockage in the city's main drain line off of your property." Schuelke Plumbing allegedly responded to the homeowners' call on the date of the incident.

[8]    Appellants rely on *People ex rel. Sepulveda v. Highland Fed. Savings & Loan* (1993) 14 Cal.App.4th 1692, 1716, to argue that specificity is not required as these details are matters to be addressed in discovery, not on demurrer. In that case, the court analyzed the allegations of racketeering activity based upon mail fraud and concluded the complaint sufficiently described the nature of the mailings and the place of mailings, along with the time, place, and content of the fraud. This was sufficient. (*Id.* at pp. 1716-1717.) In contrast, the allegations in the first amended complaint that Allstate took "extraordinary measures" to conceal facts are devoid of any similar allegations of when, where, to whom, and by what means extraordinary measures were taken.

12

ensure the complaint is specific enough so that the court can "weed out nonmeritorious actions on the basis of the pleadings." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216-217, superseded by statute on another ground, as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227.) The fraudulent concealment cause of action in the first amended complaint fails to meet this pleading standard, and appellants have made no showing that this pleading defect can be cured by amendment. Accordingly, the trial court did not err in sustaining the demurrer without leave to amend.

     5. *Negligent Misrepresentation Claim Fails as a Matter of Law*

     Appellants assert the demurrer to this cause of action was without merit, but they do not specifically address why the negligent misrepresentation cause of action is sufficiently alleged, referring collectively to their "nondisclosure claims." The negligent misrepresentation cause of action is based upon the denial of coverage letter, and the allegations that Allstate knew the cause of the loss, failed to disclose the true cause of the loss, and knew the loss would have been covered under the insurance policy.

     A claim for negligent misrepresentation based upon the failure to disclose a material fact is similar to fraudulent concealment, but there is no requirement of intent to deceive, only unreasonable conduct on the part of the insurer is required. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2014) ¶ 11.41, p. 11-16.) Based upon the allegations in the first amended complaint, appellants cannot plead any damages arising from the denial of coverage (for whatever reason) because we have concluded that the first amended complaint does not allege a covered loss.[9] Accordingly, the trial court did not err in sustaining the demurrer without leave to amend.

---

[9]    Like the allegations asserting a claim for fraudulent concealment, the allegations to support the negligent misrepresentation claim are general and conclusory. It is unclear whether claims for negligent misrepresentation are held to the same heightened pleading standard for fraud (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184). The *Small* court held the specific pleading requirement applies to shareholder's actions asserting negligent misrepresentation. (*Ibid.*) In so holding, the Supreme Court

13

6. *Intentional Infliction of Emotional Distress*

Appellants contend that Allstate's extreme and outrageous conduct is sufficiently alleged to state a cause of action for intentional infliction of emotional distress.

Liability for intentional infliction of emotional distress extends only to conduct by the insurer directed at the insured "so extreme and outrageous 'as to go beyond all possible bonds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 499, fn. 5; *Coleman v. Republic Indemnity Ins. Co.* (2005) 132 Cal.App.4th 403, 416-417.) Delay or denial of insurance claims is not sufficiently outrageous to state a cause of action. (*Coleman v. Republic Indemnity Ins. Co.*, *supra*, at p. 417.) Because this cause of action is based upon Allstate's allegedly misrepresenting the cause of the loss in the denial of coverage letter and denying coverage, this cause of action fails as a matter of law.

suggested that if squarely presented with the issue, it might hold that the specific pleading requirement applies in other negligent misrepresentation actions. (*Ibid.*)

DISPOSITION

The judgment of dismissal is affirmed.  Respondents are entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

KITCHING, J.

15