[No. B239145. Second Dist., Div. Four. Dec. 18, 2012.]

CARDIO DIAGNOSTIC IMAGING, INC., Plaintiff and Appellant, v.
FARMERS INSURANCE EXCHANGE et al., Defendants and Respondents.

COUNSEL

David A. Lingenbrink and Joseph Y. Avrahamy for Plaintiff and Appellant.

Stone & Hiles, Frank L. Kurasz; Greines, Martin, Stein & Richland, Robert A. Olson and Gary J. Wax for Defendants and Respondents.

OPINION

WILLHITE, Acting P. J.—This case involves the interpretation of an insurance policy exclusion. The exclusion at issue excludes any "loss or damage caused directly or indirectly by . . . [w]ater that backs up or overflows from a sewer, drain or sump." The question is whether this exclusion applies to damage caused when a malfunctioning toilet failed to shut off the intake of water and, because there was a blockage in the sewer line, the toilet overflowed, causing water to leak into the business premises occupied by plaintiff and appellant Cardio Diagnostic Imaging, Inc. (Cardio). The trial court found that the language of the exclusion was unambiguous and that the damages Cardio suffered were excluded from coverage under the insurance policy issued to Cardio by defendant and respondent Farmers Insurance Exchange (Farmers). We agree. Accordingly, we affirm the summary judgment entered in favor of Farmers.

## BACKGROUND

Farmers insured Cardio under a first party commercial property insurance policy. The policy includes a water exclusion that excludes damage caused directly or indirectly by "(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; [¶] (2) Mudslide or mudflow; [¶] (3) Water that backs up or overflows from a sewer, drain or sump; or [¶] (4) Water under the ground surface pressing on, or flowing or seeping through: [¶] (a) Foundations, walls, floors or paved surfaces; [¶] (b) Basements, whether paved or not; or [¶] (c) Doors, windows or other openings." The exclusion at issue here is number three (Water Exclusion #3). The policy states that the exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

On January 14, 2007, water overflowed from a toilet in a business suite on the third floor of the building in which Cardio rented a suite on the first floor.

The water from the third floor suite flooded Cardio's suite, causing extensive damage to the floors and equipment, including a CT scan imaging machine. Cardio tendered an insurance claim to Farmers the next day. Within two days, the claims representative assigned by Farmers to handle the claim had spoken with Cardio's president, inspected and photographed the damage to Cardio's suite, and spoken with a representative of the building's management company, who said that the toilet that overflowed was new and possibly defective.

Farmers denied coverage, citing Water Exclusion #3. Farmers subsequently determined that an exclusion for negligent work also would apply,[1] after Cardio requested reconsideration on the ground that the defective toilet caused the damage.

Cardio filed a lawsuit against Farmers, alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.[2] It sought both compensatory and punitive damages.

Farmers moved for summary judgment or, in the alternative, summary adjudication of issues on the ground that both the Negligent Work exclusion and Water Exclusion #3 excluded coverage for Cardio's loss. At the same time, Cardio moved for summary adjudication, seeking a determination that for Water Exclusion #3 to apply, "the water causing damage must, at a minimum, have been inside the relevant sewer, drain, or sump and then come out of the sewer, drain, or sump causing the damage."

In support of its motion, Farmers submitted, among other evidence, excerpts from the deposition of Jay Chase, a licensed plumber who had installed the toilet at issue. Chase inspected and tested the toilet in place after the water overflowed, then removed the toilet and conducted additional tests at his facility. He concluded that there was a blockage in the sewer line approximately 20 to 40 feet away from the toilet, and that blockage caused the water in the toilet to overflow.

Cardio did not dispute that the blockage caused the loss. Indeed, in the context of arguing that the Negligent Work exclusion did not apply under the

---

[1] That exclusion (the Negligent Work exclusion) excludes loss or damage caused by "[f]aulty, inadequate or defective . . . [d]esign, specifications, workmanship, repair, construction, renovation, remodeling, . . . [or m]aterials used in repair, construction, renovation or remodeling."

[2] Cardio also sued Farmers Group, Inc., but it was dismissed. Cardio does not challenge that dismissal.

efficient proximate cause doctrine, Cardio observed that "[w]ithout a blockage, . . . a running toilet wastes water but does not cause a flood," and asserted that "since the water damage would not have occurred absent drain blockage, the blockage was, as a matter of law, the most important cause of loss." Cardio contended, however, that the fact that the blockage caused the loss did not preclude coverage. Relying upon outside sources, including advertisements and Internet searches, as well as the placement of Water Exclusion #3 in the policy, Cardio argued that Water Exclusion #3 was intended to apply in cases of large-scale disasters, and was not intended to apply to situations in which water is unable to flow down an inside drain due to a blockage.

The trial court found that Water Exclusion #3 was clear and unambiguous (and thus the extraneous material Cardio relied upon was not relevant), and that Cardio's claim "falls directly outside of coverage." The court granted Farmer's motion and entered judgment against Cardio.[3] Cardio timely filed a notice of appeal from the judgment.

## DISCUSSION

The primary issue in this appeal is the interpretation of Water Exclusion #3. Because there is no factual dispute at issue, the interpretation and application of the exclusion is an issue of law that we review de novo. (*Penn-America Ins. Co. v. Mike's Tailoring* (2005) 125 Cal.App.4th 884, 889 [22 Cal.Rptr.3d 918] (*Penn-America*).)

### A. *Rules Governing Interpretation of an Insurance Policy*

■ An insurance policy is a contract. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in

---

[3] The court initially denied summary judgment, finding there was a triable issue regarding the Negligent Work exclusion and the applicability of the efficient proximate cause doctrine. The court subsequently reconsidered its ruling and found that there was only one cause of the loss—the blockage in the drain—and therefore the efficient proximate cause doctrine does not apply. Cardio does not dispute that the cause of the loss was the blockage of the drain line, rather than the defective toilet. Therefore, we need not address the Negligent Work exclusion here.

their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations.]" (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822 [274 Cal.Rptr. 820, 799 P.2d 1253].)

" 'An ambiguity arises only if ". . . there [is] more than one construction in issue which is semantically permissible . . . ." [Citation.]' [Citation.] In the case of an insurance policy there must be an ' "uncertainty in the application of the policy language to the facts upon which the claim of coverage is predicated." ' [Citation.] 'A claim of ambiguity cannot always be decided from the face of the [language]. It may be latent.' [Citation.]" (*Penn-America, supra*, 125 Cal.App.4th at p. 889.)

"If there is ambiguity, . . . it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. (Civ. Code, § 1649.) If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. (*Id.*, § 1654.) In the insurance context, we generally resolve ambiguities in favor of coverage. [Citations.]" (*AIU Ins. Co. v. Superior Court, supra*, 51 Cal.3d at p. 822.)

### B. *Interpretation of Water Exclusion #3*

We begin with the language of the exclusion: "Water that backs up or overflows from a sewer, drain or sump." Cardio contends that "backs up or overflows from" means that water must *come out* of the sewer or drain, and does not include water unable to proceed down an interior drain. In making this contention, Cardio focuses almost exclusively on the "backs up" portion of the exclusion, arguing that "backs up and overflows from" is a pleonastic phrase, similar to "each and every," "null and void," and "cease and desist." Cardio's argument might be well taken if Water Exclusion #3 actually stated that it excluded water that "backs up and overflows from" a sewer or drain. But it does not. Instead, the phrase used is "backs up *or* overflows from" a sewer or drain. That difference is critical. It unambiguously makes a distinction between water that backs up from a sewer or drain and water that overflows from a sewer or drain. Given the "fundamental principle that policy language be so construed as to give effect to every term" (*Mirpad, LLC v. California Ins. Guarantee Assn.* (2005) 132 Cal.App.4th 1058, 1072 [34

Cal.Rptr.3d 136]), we must interpret Water Exclusion #3 in a way that gives meaning to both "backs up" and "overflows."

In light of this, Cardio's reliance on case law interpreting exclusions that referred only to water that "backs up" (rather than "backs up or overflows") is misplaced. (See *Citrano v. Hingham Mutual Fire Ins. Co.* (2003) 58 Mass.App.Ct. 906 [788 N.E.2d 975] [excludes water that backs up from sewer or drain]; *Capelouto v. Valley Forge Ins. Co.* (1999) 98 Wn.App. 7, 16 [990 P.2d 414] [same]; *Rodin v. State Farm Fire & Casualty Co.* (Mo.Ct.App. 1992) 844 S.W.2d 537, 538 [same]; *Dent v. Allstate Indemnity Co.* (2011) 82 Va.Cir. 386 [excludes water that backs up from sewer or drain, or water that overflows from sump].) Although the remaining two cases that Cardio relies upon interpreted exclusions that include both "backs up" and "overflows" from sewers or drains (*Drutz v. Scottsdale Ins. Co.* (D.Md., Feb. 28, 2012, Civ. A. No. WMN-10-34-99) 2012 WL 665984; *Surabian Realty Co., Inc. v. NGM Ins. Co.* (2012) 462 Mass. 715 [971 N.E.2d 268]), we find those cases unpersuasive. In neither case did the court address the distinction between "backs up" and "overflows," and both courts relied exclusively on cases interpreting exclusions that applied only to water that "backs up" from a sewer or drain. (See *Drutz, supra*, 2012 WL 665984 at pp. *3–*4, relying upon *Hallsted v. Blue Mountain Convalescent Center, Inc.* (1979) 23 Wn.App. 349 [595 P.2d 574]; *Haines v. United Security Ins. Co.* (1979) 43 Colo.App. 276 [602 P.2d 901]; *Old Dominion Ins. Co. v. Elysee, Inc.* (Fla.Dist.Ct.App. 1992) 601 So.2d 1243; see also *Surabian, supra*, 971 N.E.2d at p. 272, relying upon *Front Row Theatre, Inc. v. American Manufacturer's Mutual Ins. Companies* (6th Cir. 1994) 18 F.3d 1343, 1348 [policy excluded surface water but covered water that "backs up from a sewer"; court found that "backs up" means water flows in opposite direction from usual flow]; *Dent v. Allstate Indemnity Co., supra*, 82 Va.Cir. 386.)

Alternatively, Cardio relies upon the placement of Water Exclusion #3 in the policy to argue that the exclusion applies only when the water causing damage comes out of a sewer or drain. Cardio notes that Water Exclusion #3 is "surrounded by other exclusions for potentially major external events," such as earth movement, governmental action, nuclear hazard, power failure, or war and military action. It argues that the purpose of all of these exclusions "is to shield insurers from potentially widespread liability from single external events," and that Water Exclusion #3 should be understood in this context. While Cardio is correct that most of the exclusions listed under section B.1 of the policy (of which Water Exclusion #3 is a part) are aimed at losses caused by external events and likely to affect large numbers of people, there is nothing in the language of Water Exclusion #3 (or the other water exclusions) that limits its application to those kinds of events.

■ Looking at the language of Water Exclusion #3, we find it is unambiguous on its face. A layperson would understand it to include both water that comes up out of a sewer, drain, or sump ("backs up") and water that spills over from a sewer, drain, or sump ("overflows") due to a blockage. The language is not reasonably susceptible to the interpretation asserted by Cardio because that interpretation can be reached only by ignoring part of the language. ■ Therefore, the extrinsic evidence Cardio relies upon to interpret "backs up or overflows" is irrelevant and cannot be used to alter the plain meaning of the policy. (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 435 [204 Cal.Rptr. 435, 682 P.2d 1100] [" 'The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is . . . whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.' "]; *Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 457 [10 Cal.Rptr.3d 617] ["We find that in light of the clear, explicit, and repeated language of the policy, it is not reasonably susceptible to the trial court's interpretation. Thus, there is no need to consider extrinsic evidence."].)

Cardio argues, however, that the exclusion nevertheless does not apply in this instance because the water overflowed from a toilet rather than a drain. We disagree. The toilet was attached to a drain. Ordinarily, the water (or other substances) that enter the toilet flow through the drain into pipes that lead to the sewer system. If there is a blockage in the pipes or sewer system, the pipes leading to the drain will be filled and any additional water will overflow into, and eventually out of, the toilet. That is what happened here.[4] Therefore, Water Exclusion #3 applies, and the loss is not covered under the policy at issue.

## C. *Cardio's Claims*

In light of our conclusion that Water Exclusion #3 applies to exclude the loss at issue, we find the trial court properly found that Farmers was entitled to judgment as a matter of law on Cardio's claim for breach of contract. And, because no policy benefits were due under the policy, Cardio's claim for breach of the implied covenant of good faith and fair dealing cannot be maintained. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 35 [44 Cal.Rptr.2d 370, 900 P.2d 619].) Therefore, the trial court properly granted summary judgment in favor of Farmers.

---

[4] Had there been a blockage in the toilet itself (i.e., before the drain), we might reach a different result. But the evidence before the trial court was undisputed that the blockage that caused the overflow was in the pipes, about 20 to 40 feet from the toilet.

## DISPOSITION

The judgment is affirmed. Farmers shall recover its costs on appeal.

Manella, J., and Suzukawa, J., concurred.