Filed 7/22/13  Verniero v. Allstate Ins. Co. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JOHN VERNIERO et al., | B236212 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC388553) |
| v. | |
| ALLSTATE INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Alan S. Rosenfeld, Judge.  Affirmed in part; reversed in part with directions.

Shernoff Bidart Echeverria Bentley, Michael J. Bidart, Ricardo Echeverria, Steven Schuetze, Steven Messner; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Plaintiffs and Appellants.

MacGregor & Berthel, Gregory Michael MacGregor, Deborah A. Berthel and R. Timothy O'Connor for Defendant and Respondent.

_____

# INTRODUCTION

In denying a claim for water damage to a residence caused by a burst pipe, the insurer in this case relies on an exclusion in the insurance policy for wear and tear. In arguing that the exclusion does not apply, the insured relies on an exception to the exclusion. The insurer claims the language of the exception is unambiguous and does not apply. The trial court agreed. We find plenty of ambiguity, and conclude that the trial court improperly granted the insurer's motion for summary adjudication on the insured's cause of action for breach of contract stemming from the denial of the insureds' claim for water damage caused by the burst pipe. We conclude, however, that the trial court properly granted the insurer's motion for summary adjudication on the insureds' claims for breach of the implied covenant of good faith and fair dealing and for punitive damages.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *A Pipe Bursts*

On July 1, 2007 John Verniero and his wife Maria Calabrese left their home in the "early afternoon." When they "returned at about 7:00 pm" they heard noises that led them "to believe that water was leaking from somewhere." They called a plumber, Pink Plumbing, and the next day they "observed about a foot of water covering the crawl space."

The rupture in the pipe occurred about a foot below the surface of the ground, next to the corner of the foundation on the outside of, but not quite under, the house. The break in the pipe was in the inlet water main pipe that runs from a meter near the curb, continues along the foundation, connects to the house inside the crawl space under the home, and services the house. The pipe comes out of the ground right next to the foundation and is "up against the brick and mortar surface" of the foundation of the house. Water from the broken pipe entered the crawl space and accumulated into a small

2

"lake" in the crawl space area. The water penetrated the subsurface and caused a "differential heave" in the soil under the home. A contractor retained by Verniero and Calabrese stated, after "thoroughly inspect[ing] the home," that the "water caused the soils to expand, causing the foundation to rise, shift and subside as the moisture levels changed, which in turn caused substantial damage to the structure," including damage to the floor insulation, framing and sheeting, floors, walls, and ceiling. Verniero and Calabrese observed buckling in the hardwood floors and walls, kitchen cabinets and doors out of adjustment, cracks in the ceiling, and walls separating from the ceiling.

B. *The Policy's Coverage, Exclusion, and Exception*

Allstate issued Verniero and Calabrese a "Deluxe Plus Homeowners Policy." The policy covers "sudden and accidental direct physical loss to property" described as the "dwelling including attached structures," "[c]onstruction materials and supplies at the residence premises for use in connection with [the] dwelling," and "[w]all-to-wall carpeting fastened to [the] dwelling." The policy defines "dwelling" as "a one, two, three or four family building structure . . . where you reside and which is principally used as a private residence," and defines "building structure" as "a structure with walls and a roof."

The policy contains various exclusions and exceptions to the exclusions. Exclusion 15 of the policy excludes from coverage nine categories of losses, listed as (a) through (i):

"a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;

"b) mechanical breakdown;

"c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

"d) rust or other corrosion, mold, wet or dry rot;

"e) contamination, including, but not limited to the presence of toxic, noxious, or hazardous gasses, chemicals, liquids, solids or other substances at the residence premises or in the air, land or water serving the residence premises;

3

"f)     smog, smoke from the manufacturing of any controlled substance, agricultural smudging[1] and industrial operations;

"g)     settling; cracking; shrinking; bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

"h)     insects, rodents, birds or domestic animals.  We do cover the breakage of glass or safety glazing materials caused by birds; or

"i)     seizure by government authority."

An exception to Exclusion 15 provides, however, that if any of the conditions listed in "(a) through (h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within your dwelling, we cover the direct physical damage caused by the water or steam."  The exception further provides:  "If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of your dwelling necessary to repair the system or appliance.  This does not include damage to the defective system or appliance from which the water escaped."  This case involves the interpretation of the words "within your dwelling" and a determination of what "within your dwelling" modifies in the first sentence of the exception.[2]

On September 2, 2007 Allstate denied the claim by Verniero and Calabrese on the ground Exclusion 15 applied and that the exception to Exclusion 15 did not.  Allstate stated that the loss "was caused by:  failure of a plumbing system that was not within the

---

**1**     Agricultural smudging is a frost-preventative measure used in orchards that involves the use of heavy smoke to prevent the radiation of frost. (*Midwest Specialties, Inc. v. Westfield Ins. Co.* (Ohio App. 1994) 1994 WL 107192 at p. 11; see *Milliken v. Neil* (Colo. 1917) 167 P. 770 ["heavy frost in the valley" ruined "the fruit crop for [the] year" where "there had been no arrangements for the protection of [the] orchard by smudging"].)

**2**     The policy also excludes losses caused by flood, sewage back up, sump pump overflow, water below the ground, and seepage, but these exclusions are not at issue in this appeal.

4

dwelling," and advised its insureds that the policy did not cover the loss because "the pipe was outside the perimeter of the house." Allstate explained that "the location of the pipe failure was out side [*sic*] the footing of the house," and that "the wording of exclusion #15, 'within your dwelling' is in this case applicable to this occurrence and the policy is therefore unable to assist with . . . any repairs to the house that may be required as a result of the failure of this water line."

### C. *Verniero and Calabrese File This Action*

Verniero and Calabrese commenced this action on April 4, 2008. In their second amended complaint filed on November 20, 2008, they alleged that on July 1, 2007 they "heard water splashing underneath their house, up against the first floor and walls," and that a "sudden, unexpected and accidental burst of a plumbing pipe had caused a large amount of water under their house," which caused damage to property covered by the policy. Verniero and Calabrese alleged that on September 3, 2007 Allstate improperly denied their claim "on the basis that Allstate contended the failed plumbing system is outside the footprint of the house," and that Allstate "unreasonably relied on unclear and ambiguously worded language in the Policy." Verniero and Calabrese also alleged that Allstate wrongfully denied a separate claim for loss in 2008 for "additional, substantial damage to their home as a result of catastrophic rain and windstorms throughout Southern California."[3] Verniero and Calabrese asserted causes of action against Allstate for breach of contract and breach of the implied covenant of good faith and fair dealing, as well as a claim for punitive damages.

---

[3] The parties refer to the July 1, 2007 broken pipe loss as the 2007 water claim, and the 2008 rain storm loss as the 2008 wind and rain claim. As explained below, this appeal does not involve the 2008 claim.

5

D.  *Allstate Files a Motion for Summary Judgment or Adjudication*

On August 13, 2009 Allstate filed a motion for summary judgment or in the alternative for summary adjudication. Allstate moved for summary adjudication that it had no duty to pay policy benefits for the 2007 water claim because the loss was not covered and because the loss did not occur during the policy period. Allstate argued that the language of the exception to Exclusion 15 was unambiguous and excluded coverage for the 2007 water claim. Allstate also moved for summary adjudication on the second cause of action for breach of the implied covenant of good faith and fair dealing and on the claim for punitive damages. Allstate argued that it properly denied the 2007 water claim because "the burst pipe was outside the footings of the dwelling and not inside or under the dwelling."[4] Allstate also moved for summary adjudication that it had no duty to pay policy benefits for the 2008 wind and rain claim.

The day before the October 1, 2009 hearing on Allstate's motion, Verniero and Calabrese filed an ex parte application for leave to file supplemental papers in opposition to the motion and to continue the hearing pursuant to Code of Civil Procedure section 437c, subdivision (h), based on their recent discovery of this court's unpublished decision in *Korbatov v. Allstate Ins. Co.* (July 5, 2000, B125702).[5] Verniero and

---

[4]  Allstate also argued in the trial court that evidence of a contractor's negligent installation of sump pumps and "shoddy, defective workmanship" in remodel work on the house demonstrated that the 2007 water loss was preexisting, occurred outside the policy period, and was excluded from coverage pursuant to several exclusions in the policy. Allstate has not pursued these theories on appeal.

[5]  The unpublished opinion in *Korbatov* was (and still is) not available on Westlaw, Lexis, or the Court of Appeal's website because "it was issued before Lexis and Westlaw began posting unpublished opinions online." Counsel for Verniero and Calabrese found the case in September 2009 when they located in the archives of a website devoted to complaints about Allstate a reference to an appellate brief filed in the *Korbatov* case. Counsel tracked the Los Angeles Superior Court case number to the Court of Appeal case, and on September 24, 2009 received from the clerk of the court a copy of this court's opinion in *Korbatov* for $5. The docket on the Court of Appeal's website shows that the file was retrieved from archives in November 2009 and returned in December 2009. The record on appeal in *Korbatov* was destroyed in 2011.

Calabrese argued in their ex parte application that in *Korbatov* this court held that the identical language in the same exception to Exclusion 15 was ambiguous, that Allstate was collaterally estopped from arguing otherwise, and that "Allstate's insistence on adhering to its interpretation after the unpublished [*Korbatov*] opinion was issued against Allstate is evidence that Allstate acted in bad faith in this case." The trial court denied the ex parte application, finding no good cause under Code of Civil Procedure section 437c, subdivision (h), because the "[u]npublished opinion [was] rendered in 2000."

E. *The Trial Court Rules; the Case Goes to Trial; Verniero and Calabrese Appeal*

The trial court "determine[d], as a matter of law, that no ambiguity exists in the language of Exclusion 15 of the Allstate Insurance Homeowner's Policy at issue here, including the 'exception' language, stating: 'If any of [exclusions] (a) through (h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within your dwelling, we cover the direct physical damage caused by the water or steam.'" The court also "rejected Plaintiff's contention that if one were to project upward from the point of the break, one would touch an overhang or an eve of the roof such that the break was located 'within' the dwelling . . . ." The court found that "the Policy is not susceptible to that interpretation because the scenario Plaintiffs proffer would mean that at any time, the addition of an overhang or a projection or a prolongation of the roof line would move the line that was sought to be drawn by the contract terms of the policy as 'within [your] dwelling.'" The court found that it was undisputed the "pipe was not within the four walls of the dwelling." The trial court therefore granted Allstate's motion for summary adjudication of the 2007 water claim. The trial court, however, denied Allstate's motion for summary adjudication that it had no duty to indemnify the 2008 wind and rain claim. The court filed a written order on November 3, 2009.

On November 13, 2009 Verniero and Calabrese filed a motion for reconsideration, arguing that the *Korbatov* decision was new matter under Code of Civil Procedure

7

section 1008, subdivision (a), and that it collaterally estopped Allstate on the issue of whether the exception to Exclusion 15 is ambiguous.  They also argued that there were triable issues of fact on their bad faith claim because "Allstate knew that its interpretation of Allstate's exact same policy language was adjudicated as ambiguous in *Korbatov*," yet "steadfastly maintained [the] same interpretation of the policy language that had previously been adjudicated to be ambiguous at best."  The trial court denied the motion for reconsideration on the grounds that the *Korbatov* opinion did not constitute "new or different facts, circumstances, or law," and that Verniero and Calabrese had "not shown on the merits that collateral estoppel applies to the interpretation of Exclusion 15 in the policy at issue in this lawsuit."

The parties proceeded to trial on the causes of action based on the 2008 wind and rain claim.  On July 7, 2011 the jury returned a verdict in favor of Allstate.  On July 25, 2011 the trial court entered judgment in favor of Allstate.  On September 22, 2011 Verniero and Calabrese filed a notice of appeal from the judgment.

## DISCUSSION

A.    *Standard of Review*

We apply a de novo standard of review to an order granting summary judgment or adjudication based on the interpretation of an insurance policy.  (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1394, petn. for review filed June 11, 2013, S211292; *Federal Ins. Co. v. Steadfast Ins. Co.* (2012) 209 Cal.App.4th 668, 679.)  "The interpretation of an insurance policy, like other contracts, is a legal question to which the court applies its own independent judgment."  (*Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2010) 184 Cal.App.4th 196, 204.)  "As a question of law, the interpretation of an insurance policy is reviewed de novo under well-settled rules of contract interpretation.  [Citation.]  'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties.  "Under statutory rules of contract interpretation, the mutual

8

intention of the parties at the time the contract is formed governs interpretation. [Citation.]  Such intent is to be inferred, if possible, solely from the written provisions of the contract.  [Citation.]  The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation. [Citation.]'" [Citation.]" (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470; *Health Net, Inc. v. RLI Ins. Co.* (2012) 206 Cal.App.4th 232, 251; see *County of San Diego v. Ace Property & Casualty Ins. Co.* (2005) 37 Cal.4th 406, 414 ["'In reviewing de novo a superior court's summary adjudication order in a dispute over the interpretation of the provisions of a policy of insurance, the reviewing court applies settled rules governing the interpretation of insurance contracts.'"].)

"Furthermore, policy exclusions are strictly construed [citations], while exceptions to exclusions are broadly construed in favor of the insured [citations].  '"[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again 'any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.' [Citation.]  Thus, 'the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.' [Citation.]  The exclusionary clause 'must be *conspicuous, plain and clear.*'" [Citation.]  This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded.' [Citation.]" *E.M.M.I. Inc. v. Zurich American Ins. Co.*, *supra*, 32 Cal.4th at p. 470; *Health Net, Inc. v. RLI Ins. Co.*, *supra*, 206 Cal.App.4th at p. 251.)

B.      *Breach of Contract*

1.      The Parties' Contentions

Allstate argues that the one and only reasonable interpretation of the language of Exclusion 15 and its exception is that the exception applies only if the point at which the pipe burst is within the insured's dwelling.  Allstate did not argue in the trial court and

does not argue on appeal that the exception applies when the "escape of water or steam" occurs within the insured's dwelling. Allstate did not argue in the trial court and does not argue on appeal that the exception applies when the "plumbing system" is within the insured's dwelling. Allstate's argument is that the exception applies only when the location of the pipe break or "burst" is within the insured's dwelling. As counsel for Allstate argued to the trial court, "[w]e would argue that it's pretty clear that what we're talking about here is where the break is happening as opposed to where the water is happening." As Verniero and Calabrese point out, however, there is usually little difference between arguing that the "burst pipe" must be within the dwelling and arguing that the escape of water must be within the dwelling.[6]

Verniero and Calabrese argue that the exception to Exclusion 15 is ambiguous and should be construed in their favor, that even if Allstate's interpretation were reasonable it is not the only reasonable one, and that water escaping from a plumbing system within their dwelling causing damage to their home is covered. They also argue that Allstate is collaterally estopped from arguing otherwise because in *Korbatov*, this court found that the same exact exception to Exclusion 15 was ambiguous.

### 2. Exclusion 15 of the Policy Is Ambiguous

"An insurance policy provision is ambiguous when it is capable of two or more constructions, both of which are *reasonable*. [Citation.] The uncertainty may relate to the extent or existence of coverage, the peril insured against, the amount of liability or the

---

**6** We distinguish between where the "pipe bursts" and where the "water escapes" because the parties do. We note that it is possible that damage could occur at a location in the plumbing or other system not within the dwelling that causes the escape of water or steam at a different location in the system that is within the dwelling. For example, a valve in the plumbing system outside of the dwelling may malfunction or even "burst" such that the increased flow of water causes water to escape within the dwelling. (See, e.g., *Cardio Diagnostic Imaging, Inc. v. Farmers Ins. Exchange* (2012) 212 Cal.App.4th 69, 71, 72 [a blockage in the sewer line caused water to back up and overflow from a toilet within the premises and 20 to 40 feet away from the blockage].)

party or parties protected." (*Jordan v. Allstate Ins. Co.* (2004) 116 Cal.App.4th 1206, 1214.) Thus, the proper question is whether the particular phrase is ambiguous in "'the context of *this* policy and the circumstances of *this* case. [Citation.] "The provision will shift between clarity and ambiguity with changes in the event at hand." [Citation.]' [Citation.] This question must be answered through the eyes of a reasonable person in the position of the insured." (*Ibid.*; see *State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 195 ["'A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable.'"]; *Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390 [same].) "'Even language that may be plain and clear may be found to be ambiguous when read in the context of the policy and the circumstances of the case and, in order to give effect to the insured's objectively reasonable expectations, construed in the insured's favor.'" (*Clarendon America Ins. Co. v. North American Capacity Ins. Co.* (2010) 186 Cal.App.4th 556, 567.)

"'Language in an insurance policy is "interpreted as a whole and in the circumstances of the case, and cannot be found to be ambiguous in the abstract."' [Citation.] When the relevant provisions of an insurance policy are ambiguous, extrinsic evidence may be admitted to determine the proper interpretation. [Citations.] If there is no relevant extrinsic evidence or the extrinsic evidence does not resolve the ambiguity, the court must interpret ""'the ambiguous provisions in the sense the [insurer] believed the [insured] understood them at the time of formation. [Citation.] If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. [Citation.]'"""'" (*Palacin v. Allstate Ins. Co.* (2004) 119 Cal.App.4th 855, 862; see *Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 321 ["'[o]nly if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer'"]; *Powerine Oil Co., Inc. v. Superior Court*, *supra*, 37 Cal.4th at p. 391 ["'"If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage."'"'];

11

*E.M.M.I. Inc. v. Zurich American Ins. Co.*, *supra*, 32 Cal.4th at p. 471 ["'"Any ambiguous terms are resolved in the insured['s] favor, consistent with the insured['s] reasonable expectations."'"].) "The 'tie-breaker' rule of construction against the insurer stems from the recognition that the insurer generally drafted the policy and received premiums to provide the agreed protection." (*Minkler*, *supra*, at p. 321.)

"To further ensure that coverage conforms fully to the objectively reasonable expectations of the insured, the corollary rule of interpretation has developed that, in cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer. The insured has the burden of establishing that a claim, unless specifically excluded, is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies." (*Minkler v. Safeco Ins. Co. of America*, *supra*, 49 Cal.4th at p. 322.) "Policy exclusions are strictly construed" while "[e]xceptions to exclusions on the other hand, are broadly construed in favor of the insured." (*Jordan v. Allstate Ins. Co.*, *supra*, 116 Cal.App.4th at p. 1214.) The insurer has the burden of phrasing "'"'exceptions and exclusions in clear and unmistakable language.'"'" (*E.M.M.I. Inc. v. Zurich American Ins. Co.*, *supra*, 32 Cal.4th at p. 471.)

Allstate argues repeatedly that the language of Exclusion 15 and its exception is "plain," "clear," "unambiguous," "explicit," and "unequivocal," and that any other interpretation would be "strained," "distorted," and "tortured." We disagree. Allstate's interpretation is a reasonable one, but it is not the only reasonable interpretation. (See *MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 655 [even if insurer's "interpretation is considered reasonable, it would still not prevail, for in order to do so it would have to establish that its interpretation is the *only* reasonable one"].)

The language of Exclusion 15 and its exception, considered as a whole and in the context of the policy, is ambiguous because it is capable of at least four reasonable constructions. First, although not argued by either side here, "within your dwelling" can modify "escape of water," so that the exception to the exclusion applies where water escapes into the insured's dwelling. Second, as Allstate argues on appeal, "within your

12

dwelling" can mean the location where the damage to the system or appliance is (i.e., where the "pipe bursts"), so that the exception to the exclusion applies when the "pipe bursts" within the insured's dwelling. Third, as Verniero and Calabrese argue, "within your dwelling" can modify only the immediately preceding antecedent "fire protective sprinkler system," so that the exception to the exclusion applies "to traditional, indoor, ceiling-mounted sprinklers — which are distinct from external fire sprinkler systems."[7] Fourth, and also not argued by either side, "within your dwelling" can modify the entire list of antecedents, so that the exception to the exclusion applies to water escaping from (a) a plumbing system within the dwelling, (b) a heating or air conditioning system within the dwelling, (c) an appliance within the dwelling, and (d) a fire protective sprinkler system within the dwelling.

These are all reasonable interpretations of Exclusion 15 and its exception (although the specific interpretation urged by Verniero and Calabrese based on the last antecedent rule is the least convincing). Therefore, the language of the policy is ambiguous. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 ["A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable."]; *Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP*, *supra*, 184 Cal.App.4th at p. 206 [same]; *Hudson v. Allstate Ins. Co.* (N.Y. App. Div. 2006) 25 A.D.3d 654, 656 [809 N.Y.S.2d 124, 126] ["an ambiguity was created by the conflict between the provision of coverage for accidental escape of water from a plumbing system and" Exclusion 15 "[b]ecause the pipe that burst supplied water to the plaintiff's home" and therefore "was part of her plumbing system"]; *Flynn v. Allstate Indem. Co.* (N.Y. City Ct. 2009) 22 Misc. 3d 1138(A) [2009 WL 782520 at p. 13]

---

[7]    "The last antecedent rule provides that ""'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.'""" (*Mt. Hawley Ins. Co. v. Lopez*, *supra*, 215 Cal.App.4th at pp. 1412-1413.) "The last antecedent rule . . . 'is "'not immutable,'"'" should not be applied rigidly, "and has several exceptions." (*Id.* at p. 1413.)

[finding "a per se ambiguity . . . between what is excluded by paragraph 15(a) to (h) and the provision in that same paragraph for coverage if the cause is a leak in the plumbing system"].)

### 3. Application of the Rules for Interpretation of Insurance Policies Results in Coverage

Because the language of Exclusion 15 and its exception is ambiguous, we proceed to the next step in the interpretive analysis. "When the language of the policy is ambiguous, we must consider the language in the context of the policy as a whole and the circumstances of the case." (*National Casualty Co. v. Sovereign General Ins. Services, Inc.* (2006) 137 Cal.App.4th 812, 822.) "Ambiguity ""is resolved by interpreting the ambiguous provisions in the sense the [insurer] believed the [insured] understood them at the time of formation. [Citation.] If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. [Citation.]' 'This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, "the objectively reasonable expectations of the insured."""" (*E.M.M.I. Inc. v. Zurich American Ins. Co.*, *supra*, 32 Cal.4th at p. 470.) The burden is on the insurer to show that the insured could not have had an objectively reasonable expectation of coverage. (*Id.* at p. 473; *Clarendon America Ins. Co. v. North American Capacity Ins. Co.*, *supra*, 186 Cal.App.4th at p. 573.)

Allstate did not meet its burden on summary judgment. Neither side introduced any extrinsic evidence to interpret the policy, other than Verniero and Calabrese's attempt to submit the *Korbatov* opinion. Allstate did not present any evidence or argument in the trial court on the issue of what it believed Verniero and Calabrese understood about Exclusion 15 and its exception at the time the parties entered into the insurance contract. Nor does Allstate make any argument on appeal regarding what it believed its insureds understood about Exclusion 15 and its exception. Allstate argues, as it did in the trial court, that the exception to Exclusion 15 is unambiguous and that

14

therefore it is unnecessary to determine what the parties understood at the time of contract formation. Allstate does argue that Verniero and Calabrese did not have an objectively reasonable expectation of coverage because the pipe burst was not within their dwelling, but this argument is based on Allstate's theory of its insureds' understanding at the time of the loss, not at the time of contracting.

Therefore, because the ambiguity in the exception to Exclusion 15 is not resolved by any extrinsic evidence or by considering how Allstate believed its insureds understood the language, we proceed to the last step of the analysis and construe the language against Allstate. (*Palacin v. Allstate Ins. Co.*, *supra*, 119 Cal.App.4th at p. 862; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822; see *Cardio Diagnostic Imaging, Inc. v. Farmers Ins. Exchange*, *supra*, 212 Cal.App.4th at p. 74 ["'If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist.'"]; *Jordan v. Allstate Ins. Co.*, *supra*, 116 Cal.App.4th at p. 1213 [same].) In addition, as noted above, we strictly construe the exclusion against Allstate and broadly interpret the exception in favor of Verniero and Calabrese. (See *E.M.M.I. Inc. v. Zurich American Ins. Co.*, *supra*, 32 Cal.4th at p. 471; *Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1192; *Health Net, Inc. v. RLI Ins. Co.*, *supra*, 206 Cal.App.4th at p. 251.) Employing these "tie-breaker" rules (*Minkler v. Safeco Ins. Co. of America*, *supra*, 49 Cal.4th at p. 321), we conclude the policy covers Verniero and Calabrese's claim.

Interpreting Exclusion 15 and its exception in favor of the insureds in this case protects their reasonable expectation that the water damage in their dwelling would be covered by their policy. Allstate does not argue that by entering the crawl space the water did not enter the dwelling, nor does Allstate dispute that water in the dwelling caused damage within the dwelling.[8] The reasonable expectations of the insureds focus

---

[8] Although Allstate mentions in the factual summary section of its brief that "neither the water nor the pipe break were 'within [the] dwelling,'" Allstate's legal argument is "that the burst pipe was not 'within' [the] dwelling" and that "the burst pipe must be 'within [your] dwelling' for coverage under the Policy to exist."

15

on insuring against water damage to the inside of their home, whether the water comes from a plumbing system, HVAC system, fire sprinkler system, or household appliance inside, outside, or (as in this case) immediately adjacent to and touching the side of the house. The rooms in which Verniero and Calabrese spend their quiet weekday evenings after work and their lazy Sunday mornings reading the newspaper are equally damaged by the water in their dwelling, whether the water escaped from a household appliance in their kitchen, the plumbing system that brings water into their residence, or the heating and air conditioning system that exchanges air between the inside of their home and the outside world. Verniero and Calabrese reasonably expected that their insurance policy would cover their 2007 water claim.

Allstate also argues that "the reasonable insured could not expect coverage under Appellants' interpretation when one considers that such an interpretation would mean that the Policy would cover the neighbor's plumbing if there was a burst pipe and the water rolled down the hill into Appellants' house." This inapt analogy does not support Allstate's position. No one disputes there would be no coverage in Allstate's hypothetical because in that case neither the escape of water, the burst pipe, nor any of the systems or appliances identified in the exception to Exclusion 15 would be "within the dwelling." (See *Waldsmith v. State Farm Fire & Casualty Co.* (1991) 232 Cal.App.3d 693, 697, 698 [exception to exclusion for sudden and accidental leakage or seepage of water or steam from "(1) heating or airconditioning system; . . . (2) household appliance; or . . . (3) *plumbing system*" did not apply to a break in city water main because "accidental leakage from a 'plumbing system' [does not] relate[] to any system other than one directly connected to and a part of the covered residence."].) Allstate's hypothetical does not make its insureds' expectation of coverage unreasonable.

Allstate correctly argues that the language of the exception to Exclusion 15 must be interpreted in the context of the entire policy. Allstate then points to the next two sentences of the exception to Exclusion 15, which provide: "If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of your dwelling necessary to repair the system or appliance. This

16

does not include damage to the defective system or appliance from which the water escaped."  Allstate argues that "[i]t is crystal clear from this language that any systems and appliances which could have caused a covered loss addressed by this exception must have been 'within your dwelling' given that the sentence addresses tearing out and replacing any part of the dwelling necessary to repair the defective system or appliance."

Allstate's argument is both inconsistent and incorrect.  It is inconsistent with Allstate's argument on appeal that the exception to Exclusion 15 applies when the location of the damage to the plumbing system (i.e., the location of the break in the pipe) is within the dwelling, not when the system or appliance is within the dwelling.  As Verniero and Calabrese point out, Allstate's inconsistency proves their point:  If "within your dwelling" modifies "plumbing system," then there is coverage because the pipe that burst was a part of a plumbing system that, at least in part, was within the dwelling.  (See *Hudson v. Allstate Ins. Co.*, *supra*, 25 A.D.3d at p. 656 [809 N.Y.S.2d at p. 126].)  Allstate's argument is also wrong:  It may be necessary to tear out and replace part of the dwelling to repair a part of a system (or even an appliance)[9] that is within the dwelling but has been damaged at a point that is not within the dwelling.

The trial court concluded that "the only reasonable interpretation" of the exception to the exclusion is that it applies only to "things that happened inside the house that caused the damage."  The trial court reasoned that the exclusions listed in Exclusion 15 involved "things that are coming in, in many cases, from the outside and are things that are affecting the dwelling itself" or "are starting to intrude . . . in the dwelling," like "growth of trees, shrubs, plants, or lawn above or below the ground."  The trial court found that, in contrast, the exception to the exclusion for "water or steam from a plumbing, heating, or air-conditioning system, household appliance" involved "things inherently inside the dwelling."

---

[9]  For example, if a portion of an HVAC system, drainage from a washing machine, or vent from a dryer extends from the side of the home.

17

The problem with the trial court's analysis is that the language of the policy does not say that Exclusion 15 applies to water or steam from external sources and that the exception applies to water or steam from internal sources. The language refers to water or steam escaping from systems and appliances within the dwelling. Moreover, of the nine exclusions listed in Exclusion 15, three appear to refer to occurrences that are primarily internal (a, b, and d),[10] three appear to refer to occurrences that are primarily external (c, h, and i),[11] and three refer to occurrences that could be internal or external (e, f, and g).[12] In fact, exclusion (e) is inconsistent with the trial court's internal/external distinction by distinguishing between contamination from substances "at the residence" and substances "in the air, land or water serving the residence." Similarly, exclusion (g) includes both external (patios, foundations) and internal (walls, floors, ceilings) settling and cracking.

For these reasons, we conclude that the water damage to the home of Verniero and Calabrese is covered by the policy pursuant to the exception to Exclusion 15. The trial court erred by granting Allstate summary adjudication on the first cause of action for breach of contract relating to the 2007 water claim.[13]

---

[10] Wear and tear, aging, marring, scratching, deterioration, inherent vice, latent defect (a); mechanical breakdown (b); and rust, corrosion, mold, and wet or dry rot (d).

[11] Growth of trees, shrubs, plants or lawns (c); insects, rodents, birds, or domestic animals (h) (although some domestic animals may live only in the dwelling); and seizure by government authority (i).

[12] Contamination from toxic, noxious, or hazardous gasses, chemicals, liquids, solids, or other substances at the residence premises (e); smog or smoke from the manufacture of controlled substances, agricultural smudging or industrial operation (f); settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings (g).

[13] We do not reach the alternative argument by Verniero and Calabrese that the location of the break in the pipe was within the dwelling because, even though it was outside of the wall, it was "inside the boundary formed by the outermost edges of the roof of the house as well as the footing of its foundation."

18

C. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

"The linchpin of a bad faith claim is that the denial of coverage was unreasonable." (*McCoy v. Progressive West Ins. Co.* (2009) 171 Cal.App.4th 785, 793; see *Hibbs v. Allstate Ins. Co.* (2011) 193 Cal.App.4th 809, 820 ["An insurer breaches the implied covenant of good faith and fair dealing when it unreasonably withholds policy benefits."].) The test for reasonableness of an insurer's denial of benefits is an objective one. (See *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 724; *Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1236-1237.) Nevertheless, "while an insurer's subjective bad intentions are not a sufficient basis on which to establish a bad faith cause of action, an insurer's subjective mental state may nonetheless be a circumstance to be considered in the evaluation of the *objective* reasonableness of the insurer's actions." (*Bosetti*, *supra,* at p. 1239.) "The reasonableness of an insurer's conduct is ordinarily a question of fact, except in the 'exceptional instance when "only one reasonable inference can be drawn from the evidence."'" (*Mt. Hawley Ins. Co. v. Lopez*, *supra*, 215 Cal.App.4th at p. 1424, quoting *Lee v. Fidelity National Title Ins. Co.* (2010) 188 Cal.App.4th 583, 599; see *Dalrymple v. United Services Auto. Assn.* (1995) 40 Cal.App.4th 497, 511 ["In general, where bad faith is alleged, a jury is empowered to resolve conflicting evidence regarding an insurer's conduct and motives."].)

Verniero and Calabrese argue that whether Allstate's conduct amounted to bad faith is a factual issue for the jury. We can see how a trier of fact could find Allstate's denial of Verniero and Calabrese's claim unreasonable. In *Korbatov*, a case involving the exact same policy language and the same attorneys for Allstate, this court rejected Allstate's position that the language of Exclusion 15 and its exception is unambiguous. Thus, Allstate (and its attorneys) took a position in this case that they knew this court had rejected. Moreover, "if there is an ambiguity in an insurance policy provision, the insurance company must interpret the ambiguity in favor of the policyholder." (*Griffin Dewatering Corp. v. Northern Ins. Co. of New York* (2009) 176 Cal.App.4th 172, 208.) Here, rather than interpreting the ambiguity in favor of its insureds, Allstate (1) denied

19

the existence of the ambiguity even though a court had already determined the same policy language was ambiguous, (2) argued that the language unambiguously meant something different than Allstate had argued the language unambiguously meant in *Korbatov*,[14] and (3) interpreted the ambiguous policy language against its insured to deny coverage. Discovery on these issues might have further developed evidence of Allstate's knowledge and response to the *Korbatov* decision, steps taken by Allstate to apply or revise the language of Exclusion 15 and its exception in light of *Korbatov*, and whether the *Korbatov* decision had any role in Allstate's denial of Verniero and Calabrese's claim. In these somewhat unusual circumstances, a jury could find that Allstate's "decisions and actions . . . evaluated as of the time that they were made" were unreasonable. (*Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1073; see *Wilson v. 21st Century Ins. Co.*, *supra*, 42 Cal.4th at pp. 723-724 ["'an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably'"].)[15]

The problem is that the *Korbatov* decision was not properly before the trial court on Allstate's motion for summary judgment or adjudication. The trial court denied Verniero and Calabrese's ex parte application for a continuance under Code of Civil Procedure section 437c, subdivision (h), and their motion for reconsideration. Verniero and Calabrese do not argue on appeal that the trial court abused its discretion in making either of these rulings. (See *Cheviot Vista Homeowners Assn. v. State Farm Fire &*

---

**14**   In *Korbatov* Allstate argued that the exception to Exclusion 15 was unambiguous and meant that the plumbing system must be within the dwelling. In this case Allstate is arguing that the exception to Exclusion 15 is unambiguous and means that the location of the damaged pipe must be within the dwelling.

**15**   It is true that if an insurer's denial of coverage is reasonable, the insurer cannot be liable for bad faith just because a court rejects its interpretation or position *after* the insurer denied coverage. (*Griffin Dewatering Corp. v. Northern Ins. Co. of New York*, *supra*, 176 Cal.App.4th at p. 179; see *Morris v. Paul Revere Life Ins. Co.* (2003) 109 Cal.App.4th 966.) Here, however, a court rejected Allstate's interpretation *before* Allstate denied coverage on the rejected ground.

*Casualty Co.* (2006) 143 Cal.App.4th 1486, 1500-1501 [ruling on request to continue hearing on summary judgment motion reviewed for abuse of discretion]; *Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1027 [denial of motion for reconsideration reviewed for abuse of discretion].) Therefore, Verniero and Calabrese have waived these issues. (See *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538 [failure to brief issue "constitutes a waiver or abandonment of the issue on appeal"]; *Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 452 ["point not raised in opening brief will not be considered"]; *Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1375 [contention waived where appellant did "not analyze the court's ruling in light of the applicable abuse of discretion standard of review"].)[16] Because Verniero and Calabrese did not present evidence of the *Korbatov* decision in their opposition to Allstate's motion, nor challenge on appeal the trial court's refusal to consider *Korbatov*, we cannot find that the trial court erred in granting Allstate's motion for summary adjudication on the second cause of action for breach of the implied covenant of good faith and fair dealing. (See *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1011, 1015, 1016 ["in summary judgment cases" we "limit our review to the record as compiled in [the trial] court"].)

---

**16**     Citing *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, Verniero and Calabrese contend that the arguments the trial court "entertains on reconsideration become subject to appellate review." This is not a fair characterization of *Tuchscher*. The court in *Tuchscher* determined that it could review the contentions at issue because the contentions were challenging the trial court's order reaffirming a prior order granting a special motion to strike under Code of Civil Procedure section 425.16; the contentions were not challenging "the trial court's granting reconsideration." (*Tuchscher*, *supra*, at p. 1245.) The court also noted that an """"order denying a motion for reconsideration is interpreted as a determination that the application does not meet the requirements of [Code of Civil Procedure] section 1008."""" (*Ibid.*) Here, the trial court found that Verniero and Calabrese's motion did not meet the requirements of Code of Civil Procedure section 1008.

D.     *Punitive Damages*

Because Allstate was entitled to summary adjudication on Verniero and Calabrese's cause of action for breach of the implied covenant of good faith and fair dealing, Allstate was entitled to summary adjudication in their claim for punitive damages.  (See *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 61; *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1054.)

**DISPOSITION**

The portion of the judgment in favor of Allstate on Verniero and Calabrese's cause of action for breach of contract relating to the 2007 water claim is reversed.  The matter is remanded to the trial court with directions to vacate its order granting summary adjudication and to enter a new order granting summary adjudication only on Verniero and Calabrese's claims for breach of the implied covenant of good faith and fair dealing and for punitive damages, and for trial on Verniero and Calabrese's cause of action for breach of contract relating to the 2007 water claim.  The judgment is otherwise affirmed. Verniero and Calabrese are to recover their costs on appeal.

SEGAL, J.*

We concur:

PERLUSS, P. J.                              ZELON, J.

---

*     Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22